UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

P3, *as Parent and Natural Guardian of S3,*
*an infant*,

                Plaintiff,

        v.

HILTON CENTRAL SCHOOL DISTRICT,
KIRK ASHTON, *as Principal of Northwood*
*Elementary School*, DR. CASEY KOSIOREK, and
*as Superintendent of Hilton Central School District*,

                Defendants.

———————————————————

**DECISION AND ORDER**

6:21-CV-06546 EAW

Plaintiff P3 ("Plaintiff"), as parent and natural guardian of S3, an infant, filed this

action on August 23, 2021, alleging civil rights violations pursuant to 42 U.S.C. § 1983

and related state law claims against defendants Hilton Central School District ("HCSD"),

Kirk Ashton ("Ashton"), and Dr. Casey Kosiorek.  (Dkt. 1; *see also* Dkt. 32).  Plaintiff

alleges that S3, from the time he was in second grade through the time he was in fourth

grade, was the victim of sexual abuse by Ashton, the principal of Northwood Elementary

School at the time.  Plaintiff further alleges that HCSD and Dr. Casey Kosiorek, the HCSD

Superintendent, are responsible for Ashton's conduct.

Following mediation of the case, Plaintiff filed a motion for settlement[1], seeking the

Court's approval to settle the matter with HCSD and Dr. Casey Kosiorek.  (Dkt. 49

_____

[1]     Given the sensitive nature of the allegations in this case, and with the Court's
approval, Plaintiff publicly filed a redacted version of the motion for settlement, which

- 1 -

(Mediation Certification); Dkt. 58 (Redacted Motion for Settlement)).[2]  For the following reasons, the motion to approve the settlement is granted, but Plaintiff's counsel's requested attorney's fees are reduced.

## BACKGROUND

### I.    Plaintiff's Motion for Settlement

Plaintiff filed the motion for settlement on April 23, 2023.  (Dkt. 58).  The Court reviewed Plaintiff's submissions in support of the motion and, because it found the submissions to be deficient, entered a Text Order asking for further submissions by Plaintiff's counsel.  (Dkt. 60).  Specifically, counsel had failed to set forth information from which the Court could assess whether the requested attorney's fees were reasonable, and he also calculated his attorney's fees before deducting costs and expenses, which is improper in an infant settlement case.  (*Id.*); *see, e.g., Allen v. Roberts Am. Gourmet Food, Inc.*, No. 07-CV-2661 (NGG)(ETB), 2009 WL 2951980, at *12 (E.D.N.Y. Sept. 8, 2009) ("litigation costs and expenses must be deducted from the gross settlement amount before determining attorney's fees in infant compromises not relating to medical malpractice").

---

removed both the names of the infant plaintiff and the infant plaintiff's representative, as well as the relevant settlement amounts.  (*See* Dkt. 57; Dkt. 58; Dkt. 61; Dkt. 64).  Plaintiff emailed to the Court the unredacted versions of the motion papers, which the Court has filed under seal on the docket.  (*See* Dkt. 67 (original unredacted filing); Dkt. 68 (unredacted supplemental filing; Dkt. 69 (unredacted second supplemental filing)).

[2]     The case against Ashton remains pending and the settlement does not apply to the claims against him.

Thereafter, on June 27, 2023, Plaintiff's counsel filed a supplemental declaration in further support of the motion for settlement.  (Dkt. 61).  But again, Plaintiff's counsel miscalculated his attorney's fees (deducting the mediator's fee both from the total settlement and from his client's share of the settlement).  (*Id*. at ¶ 7).  In support of his request for attorney's fees, Plaintiff's counsel argued with no factual or legal support that a one-third contingency fee is the "customary fee" charged by members of the bar for similar services, and should be approved.  (*Id*. at ¶ 6(d)).

## II.    The Motion Hearing

Because Plaintiff's counsel's submissions continued to be deficient with the supplemental submission, the Court determined that a motion hearing was necessary.  *See* L. R. Civ. P. 41(a)(1)(B).  The Court held the hearing on July 18, 2023, at which time the undersigned addressed several issues with Plaintiff's counsel.  (Dkt. 62; Dkt. 63).[3]

First, Plaintiff's counsel did not properly request to waive his clients' presence in advance of the hearing.  *See* New York Civil Practice Law and Rules ("C.P.L.R.") 1208(d) ("On the hearing, the moving party or petitioner, the infant or incompetent, and his attorney shall attend before the court unless attendance is excused for good cause.").  Nonetheless, after discussing the matter on the record, the Court waived Plaintiff's and the infant plaintiff's presence at the hearing.

---

[3]      The Court also held a motion hearing on a related case, *P4 v. Hilton Central School District et al.*, Case No. 6:21-cv-6711 (hereinafter, the "P4 case"), at that time.  The Court is awaiting further submissions from the parties in the P4 matter.

The Court next raised counsel's miscalculation of his attorney's fees, including that he had again improperly deducted his mediation expenses.  The Court also discussed certain time entries included in counsel's billing records, for which it appeared he had double billed his time for this case and the related P4 case.  For example, on December 1, 2022, Plaintiff's counsel spent one hour to "receive and review synopsis of trial testimony of Kirk Ashton," for both this case and for the P4 case.  Instead of dividing the time between the two cases, counsel billed the full hour to each case.  The Court also raised with counsel that his fee application lacked any discussion relevant to the lodestar figure; specifically, a discussion of counsel's own hourly rate, or what he believed to be a reasonable hourly rate for attorneys in this district.

Finally, the undersigned discussed that Plaintiff's counsel failed to outline the process by which the infant plaintiff would receive funds through the structured settlement after reaching the age of 18 years, which courts find serve the best interests of an infant plaintiff.  *See* C.P.L.R. 1206(c); *see also* L. R. Civ. P. 41(a)(1)(D) ("The Judge shall order the balance of the proceeds of the settlement or recovery to be distributed pursuant to Section 1206 of New York's Civil Practice Law and Rules, or upon good cause shown, pursuant to such plan as the Judge deems necessary to protect the interests of the infant or incompetent.").

Given the several deficiencies in his filings, the undersigned suggested that Plaintiff's counsel explore the possibility of seeking assistance from another attorney with experience settling cases on behalf of infant plaintiffs.  The Court also directed Plaintiff's counsel to make further written submissions to correct the deficiencies discussed at the

- 4 -

hearing.  (*See* Dkt. 63).  Counsel submitted a second supplemental declaration in further support of the motion for settlement on September 5, 2023.  (Dkt. 64).

## DISCUSSION

### I.   Legal Standard

Pursuant to Rule 41 of the Local Rules of Civil Procedure, the Court is required to approve settlements of actions on behalf of infant plaintiffs.  *See* L. R. Civ. P. 41(a)(1)(A). The Court is also required to determine the amount of reasonable attorney's fees and proper disbursements due the infant plaintiff's attorney.  *Id*. at (a)(1)(C).  The proceedings are to conform, as nearly as possible, to Sections 1207 and 1208 of the C.P.L.R.  *Id.* at (a)(1)(A). However, the Court may, for cause shown, dispense with any New York State requirement. *Id.*

"In determining whether an infant settlement agreement should be approved, 'the Court's role is to exercise the most jealous care that no injustice be done to the infant.'" *Leone v. Cent. Valley Sch. Bd. of Educ.*, No. 6:17-cv-01374 (MAD/ATB), 2021 WL 9666544, at *1 (N.D.N.Y. Mar. 31, 2021) (quoting *Kapusta v. Vanacore*, No. 5:17-CV-0897, 2018 WL 5777767, at *1 (N.D.N.Y. Nov. 2, 2018)).  "The analysis of an infant settlement agreement centers on whether: (1) the best interests of the infant are protected by the terms and conditions of the proposed settlement; and (2) the proposed settlement, including any legal fees and expenses to be paid, as part of the proposal, are fair and reasonable."  *Id*. (quotations, citations, and alteration omitted); *see also Martegani v. Cirrus Design Corp.*, 687 F. Supp. 2d 373, 377 (S.D.N.Y. 2010) ("a court must evaluate

whether the proposed settlement is 'fair and reasonable and in the infant plaintiff's best interests.'" (citation omitted)).

"There is no bright-line test for concluding that a particular settlement is fair," *Orlander v. McKnight*, No. 12 Civ. 4745(HBP), 2013 WL 4400537, at *3 (S.D.N.Y. Aug. 15, 2013) (citation omitted), and district courts possess "broad discretion when conducting an infant compromise hearing," *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 89 (2d Cir. 2010). A settlement may be presumed fair and reasonable "where (i) the settlement is not collusive but was reached after arm's length negotiation; (ii) the proponents have counsel experienced in similar cases; [and] (iii) there has been sufficient discovery to enable counsel to act intelligently." *I.M. by Hartmann v. DiCostanzo*, No. 16-cv-07608 (LJL), 2020 WL 1330241, at *3 (S.D.N.Y. Mar. 23, 2020) (quotations and citations omitted). "Other factors to consider include 'the complexity, and expense, and likely duration of litigation . . . [and] the risks of establishing both liability and damages.'" *Id*. (alteration in original) (citations omitted). "Moreover, courts give significant deference to a guardian's view that the settlement reached is fair and reasonable to an infant plaintiff." *Orlandi ex rel. Colon v. Navistar Leasing Co.*, No. 09 Civ. 4855(THK), 2011 WL 3874870, at *2 (S.D.N.Y. Sept. 2, 2011); *see also Orlander*, 2013 WL 4400537, at *4 ("a settlement negotiated by the natural guardian of an infant is presumptively fair and in the best interests of the child").

## II.   The Total Settlement Amount is Approved, but the Requested Attorney's Fees are Reduced.

### A. Settlement Amount and Structure

The parties seek the Court's approval to settle the case for ███████.[4]  The Court has reviewed the motion to approve the settlement, as well as the supplemental submissions filed by Plaintiff's counsel.

Plaintiff's papers include the information required by C.P.L.R. 1208.  Specifically, the submissions include a signed and notarized declaration from the infant plaintiff's father, the infant plaintiff's representative.  (Dkt. 58 at 4-8).  The declaration includes the following information: the representative's name, residence, and relationship to the infant plaintiff; the name, age, and residence of the infant plaintiff; the circumstances giving rise to the infant plaintiff's claims; the nature and extent of the damages sustained by the infant plaintiff, including the name of the licensed psychologist who treated the infant plaintiff and the present condition of the infant plaintiff[5]; the terms and proposed distribution of the proposed settlement; that there are no other motions or petitions for settlement of the infant plaintiff's claims; that there has been no reimbursement of medical expenses received from

---

[4]     Consistent with the Court's Order permitting Plaintiff's counsel to redact the relevant settlement figures from his motion papers filed on the public docket, the Court has also redacted the settlement figures from the publicly-filed version of this Decision and Order.  The unredacted version of the Decision and Order is filed under seal.

[5]     C.P.L.R. 1208(c) also requires submission of a medical or hospital report if the action is one for personal injury.  Although the Court does not have before it any records from the licensed psychologist, the papers include an explanation of the licensed psychologist's diagnosis of the infant plaintiff.  Given the nature of the allegations and the nature of the infant plaintiff's injury, the Court does not require review of the underlying medical records.

any source; and that no representative or member of the infant plaintiff's family has made a claim for damages suffered as a result of the same occurrence giving rise to the infant plaintiff's claims. (*Id.*). Further, the declaration states that Plaintiff's father approves the terms of the settlement. (*Id.* at 5, ¶ 6). *See* C.P.L.R. 1208(a).

The papers before the Court also include both a declaration and two supplemental declarations from Plaintiff's counsel, Jeffrey Wicks, Esq., of Jeffrey Wicks, PLLC, in compliance with C.P.L.R. 1208(b). (Dkt. 58 at 9-11; Dkt. 61; Dkt. 64). The attorney declarations include the following information: counsels' reasons for recommending the settlement, including that the terms are fair and just to his clients; that the settlement was the result of a careful exploration of the infant plaintiff's claims, the defenses thereto, and the damages suffered by the infant plaintiff; that counsel has not directly or indirectly become concerned in the settlement at the instance of a party or person opposing, or with interests adverse to, the infant plaintiff, nor has he received nor will he receive any compensation from such party, and he has not represented or now represents any other person asserting a claim arising from the same occurrence; and a description of the services rendered by counsel, including the attached billing records.

With respect to disposition of the infant plaintiff's proceeds from the settlement, under C.P.L.R. 1206(c), the Court may order that a structured settlement agreement be executed. *See Allen*, 2009 WL 2951980, at *11 ("In approving an infant settlement, the court may order parties to establish a structured settlement annuity providing for the payment of an award in several installments, commencing when the plaintiff turns eighteen."). To that end, the Court has reviewed Plaintiff's counsel's second supplemental

declaration, which provides the mechanism for the structured settlement to distribute the funds to the infant plaintiff. (Dkt. 64 at ¶¶ 57-64; *see also* Dkt. 69 at ¶¶ 57-64). Plaintiff's counsel states that the settlement funds will be used by Defendants or their insurer to fund the purchase of an annuity to provide future periodic payments to the infant plaintiff. Specifically, the settlement funds will be paid to MetLife Assignment Company, which may purchase the annuity through Metropolitan Tower Life Insurance Company, which is rated "A+" for financial strength by A.M. Best Company.

Counsel's papers also describe the schedule by which payments from the annuity will be accessible to the infant plaintiff over a period of 12 years. Specifically, beginning in September 2028, ▇▇▇ will be payable annually, guaranteed for five years, and in September 2033, ▇▇▇ will be payable each month, guaranteed for two years. The infant Plaintiff will receive two additional guaranteed lump sum payments, including a payment of ▇▇▇ on September 3, 2035, and a payment of ▇▇▇ on September 3, 2040. Plaintiff contends that, assuming the funding amount and date of funding remain the same, the total amount received by the infant plaintiff from the annuity will be ▇▇▇. *See, e.g., ABC v. XYZ Corp.*, No. 18-CV-11653(JGK)(JLC), 2019 WL 1292503, at *2 (S.D.N.Y. Mar. 19, 2019) (explaining that "the settlement is structured in the form of an annuity contract executed by a qualified insurer, funded by respondents, which will provide periodic payments to the infants as they mature," and therefore finding "that the settlement protects the infants' best interests"), *adopted*, 2019 WL 1304466 (S.D.N.Y. Mar. 20, 2019); *see also Orlandi*, 2011 WL 3874870, at *3-4 (discussing how plaintiff's counsel retained a firm to research the most beneficial terms for purchase of annuity with portion

of settlement remaining after attorney's fees, and concluding that "the structured settlement is reasonable and in the best interests of the infant Plaintiff," including because "[i]t will provide her with enough money to pursue a higher education, provide her with a monthly annuity for her living expenses, and, at various points in her life, will provide lump sum payments that will allow for such things as purchasing a home").

The Court has considered the best interests of the infant plaintiff in this case and whether they are protected by the terms and conditions of the proposed settlement. The settlement will allow the infant plaintiff to avoid further litigation of this matter, which involves allegations of sexual abuse. *See, e.g., Orlander*, 2013 WL 4400537, at *5 ("a trial would have its own potential for trauma on the Infants"); *see also Campbell v. City of New York*, No. 15 Civ.2088(PAE), 2015 WL 7019831, at *3 (S.D.N.Y. Nov. 10, 2015) (noting that settlement ensured the infant plaintiff would receive compensation, avoided the uncertainty of protracted litigation, and allowed him to "avoid a deposition himself, which, given his age, could be an ordeal"). Further, the infant Plaintiff's father approves of the proposed settlement, to which the Court gives significant deference.

The Court has also considered the fairness and reasonableness of the settlement. The parties reached the proposed settlement through arms-length mediation, which supports the fairness of the settlement and dispels any concern regarding collusion. *See Allen*, 2009 WL 2951980, at *11. Further, Plaintiff's counsel states that he has not directly or indirectly become concerned in the settlement at the instance of a person with interests adverse to the infant plaintiff, nor has he received any compensation from such party, and he has not represented any other person asserting a claim arising from the same occurrence.

The Court has also considered the duration of the litigation and whether there has been sufficient discovery as to Plaintiff's claims. This case has been pending since 2021, and the parties have engaged in written discovery. Plaintiff's counsel retained an expert—specifically, a licensed psychologist—to assess the infant plaintiff's injuries. Thereafter, the parties engaged in a mediation session to settle the case. Accordingly, the Court believes that there has been sufficient discovery to allow counsel to act intelligently. As to the risks of establishing liability and damages, Plaintiff's counsel has assessed the strengths and weaknesses of the case, including whether HCSD and Dr. Kosiorek had notice of Ashton's actions, and states that there was no certainty of recovery by Plaintiff.

In sum, the settlement amount is substantial, and it is fair and reasonable considering the serious nature of the allegations. Accordingly, the Court will approve the proposed settlement amount of ███████, as well as the proposed settlement structure.

### B. Attorney's Fees and Costs

Plaintiff's counsel seeks attorney's fees in the amount of ███████. This figure represents one-third of the infant plaintiff's total recovery in this case after costs, and is in accordance with the contingency fee agreement executed by Plaintiff and counsel at the outset of the case. (*See* Dkt. 64-1). Counsel has arrived at this figure by taking the total settlement amount of ███████, subtracting ███████ in costs incurred during the litigation (comprised of filing fees, service fees, the cost of the psychological evaluation and report, and the mediator's fees)[6], and taking one-third of that amount. (Dkt. 64 at ¶¶

---

[6]    Plaintiff's counsel has not included proof of the mediator's fee or proof of the costs associated with the psychological evaluation and report, such as a receipt for these

45, 49; Dkt. 69 at ¶¶ 45, 49).  In connection with his original and supplemental filings, and in further support of his request for attorney's fees, counsel submitted his billing records and a list of expenses incurred in connection with the case.  (Dkt. 58 at 13-15; Dkt. 61 at 7-9).  Counsel describes these documents as "a full list of the tasks and hours devoted to this case."  (Dkt. 61 at ¶ 6(c)).  The billing records do not specify counsel's typical hourly rate, and reflect that he spent 28.25 hours working on the case.  (*See* Dkt. 58 at 13-15; Dkt. 61 at 7-9).

In assessing the motion for settlement, the Court is required to ascertain whether the requested attorney's fees are reasonable.  Plaintiff's counsel appears to be laboring under the mistaken impression that the Court should simply accept the one-third contingency fee agreement.  (*See, e.g.*, Dkt. 61 at ¶ 6(d) ("My conclusion . . . is that a one-third (1/3) contingency is the customary fee charged by members of the bar for similar services.")).  But counsel's position is not supported by the law.

"[I]n approving an infant settlement, the Court must not simply accept the contingency fee agreement between the parties."  *I.M. by Hartmann*, 2020 WL 1330241, at *5.  "This requirement arises from the court's duty to protect infants and other wards of the court."  *Id*. (quoting *White v. DaimlerChrysler Corp.*, 57 A.D.3d 531, 533 (2d Dep't 2008)); *see also Wagner & Wagner, LLP*, 596 F.3d at 89-90 (recognizing the court's "broad discretion" in conducting infant compromise hearings, including that the court is granted

---

services.  However, because they are not disputed, and because the Court finds that the total expense amount of ███████ is not unreasonable, it will accept counsel's representations regarding his costs associated with Plaintiff's case.

"broad authority" to determine the reasonableness of the attorney's fees, and is not bound by the agreement between the attorney and the infant's guardian).

While any contingency fee agreement is relevant to the fee assessment, it is "advisory only." *I.M. by Hartmann*, 2020 WL 1330241, at *5; *see also Orlander*, 2013 WL 4400537, at *6 (explaining that infant plaintiff's guardian's agreement regarding a proposed fee is "advisory only," and the fee "must be fixed by the court" (citation omitted)); *D.J. ex rel. Roberts v. City of New York*, No. 11 Civ. 5458 (JGK)(DF), 2012 WL 5431034, at *3 (S.D.N.Y. Oct. 16, 2012) ("In short, fee agreements between an attorney and an infant's guardian are always 'subject to the power of the court,' and it is the Court's responsibility to 'determine the value of the services' provided and to award 'suitable compensation' based on those services" (citing N.Y. Jud. Law § 474)), *adopted*, 2012 WL 5429521 (S.D.N.Y. Nov. 7, 2012); *Baez v. City of New York*, No. 09-CV-2635 (RRM)(JO), 2010 WL 1992537, at *3 (E.D.N.Y. Apr. 21, 2020) (agreements on fees "serve only to guide the court in making a determination committed to its sound discretion"), *adopted*, 2010 WL 1991521 (E.D.N.Y. May 17, 2010).  Accordingly, the Court will consider whether the requested fee of ███████ is reasonable.

### 1.  The Lodestar Figure

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Orlander*, 2013 WL 4400537, at *6 (citations omitted); *see also D.J. ex rel. Roberts*, 2012 WL 5431034, at *6 ("The 'starting point' in analyzing whether claimed attorney's fees are appropriate . . . is not Plaintiffs' fee agreement, but rather 'the lodestar

– the product of a reasonable hourly rate and the reasonable number of hours required by the case.'" (quoting *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166-67 (2d Cir. 2011)).

Accordingly, the Court begins by examining the number of hours that counsel has expended on the litigation and the reasonable hourly rate. As to the latter, "[a] reasonable hourly rate is 'the rate a paying client would be willing to pay,' based on prevailing rates in the community where the court sits." *Id.* (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 189 (2d Cir. 2008)). The Court should "consider the rates approved in other cases in the District" and "any evidence offered by the parties." *D. v. City of New York*, No. 14 Civ. 7131 (JGK)(HBP), 2016 WL 4734592, at *5 (S.D.N.Y. Aug. 22, 2016), *adopted*, 2016 WL 4735365 (S.D.N.Y. Sept. 9, 2016).

Despite three separate submissions, Plaintiff's counsel has still failed to provide the Court with his own hourly rate, or any argument with respect to reasonable hourly rates in this district. "In all cases, 'the fee applicant has the burden of showing by "satisfactory evidence—in addition to the attorney's own affidavits"—that the requested hourly rates are the prevailing market rates.'" *Orlander*, 2013 WL 4400537, at *7 (quoting *Farbotko v. Clinton Cnty. of New York*, 433 F.3d 204, 209 (2d Cir. 2005)). Nonetheless, the Court is familiar with the prevailing hourly rates charged by similarly situated counsel in this legal community. *See*, *e.g.*, *Capax Discovery, Inc. v. AEP RSD Investors, LLC*, Case No. 1:17-cv-00500-CCR, 2023 WL 140528, at *6 (W.D.N.Y. Jan. 10, 2023) (collecting cases and stating that "[i]n the Western District, $400-$500 per hour is generally deemed a reasonable hourly rate for experienced trial counsel"); *State of New York v. Grand River*

*Enterprises Six Nations, Ltd.*, 14-CV-910A(F), 2021 WL 4958653, at *4 (W.D.N.Y. Oct. 26, 2021) (explaining that hourly rate of $200-$500 was reasonable depending upon attorney's level of experience); *c.f. Busrel Inc. v. Dotton*, No. 1:20-cv-01767, 2022 WL 17075707, at *3 (W.D.N.Y. Nov. 18, 2022) (explaining that "[t]he rate of $825 is not a reasonable hourly rate for attorneys in the Western District of New York and substantially exceeds the typical forum rate," and reducing hourly rate to $450, which is reasonable for experienced attorneys in this district).

With respect to the hours expended, counsel's billing records demonstrate that, between August 2021 and March 2023, 28.25 hours of work was performed on the case, including preparing pleadings and motions, meeting with his clients, participating in telephone conferences, receiving and reviewing documents, preparing answers to discovery demands, corresponding with his expert, and appearing at mediation. (Dkt. 58 at 13-15; Dkt. 61 at 7-9). As noted above, at oral argument the Court questioned counsel with respect to some of his time entries; specifically, entries for which it appeared he double billed to this case and the P4 case.

Counsel's second supplemental submission offers no further information or clarity as to that issue. Rather, it contains vague statements, lacks information with respect to specific time entries, and creates further confusion. For example, counsel states that he "has performed substantial work on Plaintiff's behalf," and that "attorneys and paralegals have spent more than 30 hours on this case." (Dkt. 64 at ¶ 51). Yet, the time records reflect that with the exception of .75 hours spent on the case by an unidentified timekeeper (CP),

it was Plaintiff's counsel who spent the remaining time on the case which is documented as 27.5 hours.  (*See* Dkt. 58 at 13-15).

Counsel further states that in addition to the infant plaintiff in this matter, he represents three other victims and their families in prosecuting nearly identical claims against Defendants, and that between the four cases, his office "has spent over a combined 300 plus hours working on these cases and developing a general litigation strategy," which has "directly benefited each family."  (*Id*. at ¶ 53).  Not only do these claims contradict the time records submitted, but vague statements about "substantial work," and combined hours spent on other cases do not ameliorate the Court's concerns raised at oral argument.  Accordingly, the Court is left with questions as to whether counsel spent the full 28.25 hours working on this case—or indeed, what hours were spent on the case.  And unfortunately, despite being provided repeated opportunities to clarify the record, Plaintiff's counsel has failed to do so—and instead only created more confusion.

Even assuming counsel's billing records accurately reflect the work performed on the case—a fact which, as explained above, the Court is not convinced—the lodestar figure would be significantly less than the amount requested.  For example, a reasonable hourly rate of $450 would result in a fee of $12,712.50 for 28.25 hours of work.  Accordingly, the lodestar figure, which serves as the "starting point" in the Court's assessment of the requested fee award, suggests that the requested fee—which is significantly higher than the lodestar figure—is not reasonable.

While courts have approved one-third contingency fee awards in infant settlement cases, those courts have also noted the similarity between the requested contingency fee

and the lodestar figure.  *See, e.g., D. v. City of New York*, 2016 WL 4734592, at *7 (noting that the "close relationship between the one-third contingency fee — $27,662.10 — and the lodestar figure — $28,000.00" was confirmation of the reasonableness of the fees sought under the proposed settlement agreement); *see also I.M. by Hartmann*, 2020 WL 1330241, at *6 ("Dividing the requested fee award by the total hours expended on the matter, the requested fee award is equivalent to an award of a little more than $277 per hour.  The Court finds that amount appropriate in light of the experience, ability and reputation of counsel, the contingency of the compensation, and the benefit obtained."). Similarly, "in contingency-fee cases where counsel's time records suggest that the lodestar would likely be materially higher than the proposed contingency fee, courts generally award the contingency fee, as being in the best interest of the minor."  *D.J. ex rel. Roberts*, 2012 WL 5431034, at *8.  However, this is not one of those cases because, as explained above, the contingency fee is significantly higher than the lodestar figure.

## 2.  Other Factors

In addition to the lodestar figure and the agreement between the attorney and the plaintiff, a court considers other factors in evaluating the requested fee, including: (1) the skill, diligence, and expertise of counsel; (2) the result achieved; (3) the time and labor devoted to the case; (4) the customary fee charged by members of the Bar for similar services; and (5) the certainty of compensation at the beginning of the case.  *See I.M. by Hartmann*, 2020 WL 1330241, at *5 (citing *White*, 57 A.D.3d at 535).  Plaintiff has addressed these factors in his supplemental declaration.  (*See* Dkt. 61 at ¶ 6).

With respect to the skill, diligence, and expertise of counsel, Plaintiff's counsel states that he has practiced law for 39 years, that he has litigated hundreds of civil cases in state and federal court during that time, and that he has diligently represented his clients in this case. (*Id*. at ¶ 6(a)). However, with respect to his representation of an infant plaintiff in connection with a settlement, Plaintiff's counsel conceded at oral argument that he had done so on only one prior occasion.

With respect to the result achieved, Plaintiff's counsel states that the settlement is substantial and was the result of a lengthy mediation session. (*Id*. at ¶ 6(b)). Counsel further states that the settlement fairly represents the merits of the case, including the damages to the infant plaintiff, as well as the strength of the case and any defenses raised by Defendants. (*Id*.). The Court agrees that the settlement achieved by Plaintiff is substantial, and it is also fair and reasonable considering the nature of the allegations against Defendants.

With respect to the time and labor spent on this case, Plaintiff's counsel refers to his billing records. (*Id*. at ¶ 6(c)). However, as explained above, a review of these records reveals that counsel spent less than 30 hours on the case, which is a very small amount of time given the substantial amount in fees that he seeks.

As to the customary fee charged by members of the bar for similar services, Plaintiff's counsel states that he has reviewed settlement papers of other counsel in similar cases before the court, as well as discussed the matter with other attorneys who have similar cases before this court and in state court, and that his conclusion is that "one-third . . . contingency is the customary fee charged by members of the bar for similar services." (*Id*.

at ¶ 6(d)).  Counsel provides no specificity with respect to these "similar cases," such as a discussion of any disparity between the contingency fee and the loadstar figure in those cases.  As noted above, the Court is cognizant that courts have found one-third contingency agreements to be "usual and customary" and have approved of such fee agreements in infant settlement cases.  *See Orlander*, 2013 WL 4400537, at *8.  However, for the reasons explained above—namely, because the contingency fee is not comparable to the lodestar figure—the Court does not find those cases instructive in this instance.   While the agreement between the parties is entitled to some consideration, it is simply advisory and certainly not controlling, and the Court considers other factors, which is part of its duty to protect infants and other wards of the court.

Finally, as to the certainty of the compensation at the beginning of the case, Plaintiff's counsel states that there was "no certainty" of compensation in absence of a settlement, including because it was questionable as to whether the School District and Dr. Kosiorek had notice of Ashton's actions and owed a duty to the infant plaintiff.  (*See* Dkt. 61 at ¶ 6(e)).

In considering all the aforementioned factors, the Court is mindful that "attorney's fees are to be awarded with an eye to moderation seeking to avoid either the reality or the appearance of awarding windfall fees." *Harb v. Gallagher,* 131 F.R.D. 381, 385 (S.D.N.Y. 1990) (quotations and citation omitted).  The Court has considered the risk taken by counsel in accepting the case on a contingency basis, as well as the substantial settlement amount achieved on behalf of the infant plaintiff in a case where recovery was not certain.  However, balanced against those factors is the significant disparity between the lodestar

figure and the proposed fee award, the time and labor spent on the case, as well as the repeated deficiencies in counsel's filings with respect to the motion for settlement approval. Further, there is at least some indication that counsel did not accurately report the hours he spent on the case.  Plaintiff's counsel has had three opportunities to carry his burden of demonstrating why the requested fee is reasonable and, on each occasion, he has failed to do so.

Bearing all these considerations in mind, the Court concludes that the requested fee is not reasonable and would result in a windfall to counsel.  Accordingly, the requested fee must be reduced.

### 3.  Reduction of the Fee Award

"A percentage reduction, typically in the range of 20 to 30 percent, is often applied as a 'practical means of trimming fat' from a fee application."  *D.J. ex rel. Roberts*, 2012 WL 5431034, at *8.  While the Court has not identified a case precisely like the one before it—in other words, an infant settlement where the contingency fee is exponentially higher than the lodestar figure—the Court has considered approaches taken by courts in reducing fees in infant settlement cases.  For example, in cases where billing records are deficient or are unclear, the court may reduce the reported hours by up to 30 percent.  *See id.* ("I recommend that [counsel] be permitted to recover $2,940 in fees, which represents compensation at her asserted hourly rate for 30-percent fewer hours than she claims to have expended on this case.").  In contingency fee cases where an attorney has failed to keep contemporaneous time records reflecting the hours expended and the work performed, courts have taken the alternative approach of reducing the requested fee amount by up to

thirty percent. *See, e.g., Griffiths ex rel. Griffiths v. Jugalkishore*, No. 09 Civ. 2657(LTS)(KNF), 2010 WL 4359230, at *7 (S.D.N.Y. Oct. 14, 2010) (reducing proposed contingency fee award by thirty percent, and explaining that "[w]hile an attorney who represents a client on a contingency fee basis may not maintain contemporaneous time records, the absence of such records frustrates a court in its effort to evaluate the fairness and reasonableness of a proposed settlement, including legal fees"), *adopted*, 2010 WL 4365552 (S.D.N.Y. Nov. 3, 2010); *Martegani*, 687 F. Supp. 2d at 378-79 (reducing proposed 28 percent contingency fee by 30 percent, due to lack of contemporaneous time records); *Lowell ex rel. Lowell v. Hall*, No. 05 CV 4978(NG)(CLP), 2007 WL 1434998, at *4 (E.D.N.Y. May 14, 2007) (noting agreement between counsel and infant plaintiffs' families that counsel would receive 33⅓ percent of the amount recovered, but "[a]fter further consultation with the Court and the infants' guardians . . . counsel has agreed to reduce the fee sought from the infant plaintiffs by one-third"); *see also D.S. ex rel. Roberts*, 2012 WL 5431034, at *8 n.8 (discussing approaches taken by courts for reducing fee in infant settlement cases).

Given both the lack of clarity in counsel's billing records, coupled with the minimal work spent on the case, the Court finds these approaches instructive and concludes that the contingency fee award should be reduced by thirty percent. Indeed, the Court has seriously contemplated an even further reduction in view of the repeated deficiencies in Plaintiff's counsel's filings and the significant disparity between the lodestar figure and amount requested. But the Court also recognizes that the case was accepted by Plaintiff's counsel with no guarantee as to its result and the result achieved was substantial.

Accordingly, reducing the requested fee by thirty percent results in a fee award to counsel in the amount of ███████. Again, while an attorney's fee of this magnitude still outstrips the lodestar figure, in reaching this conclusion the Court recognizes the risk taken by counsel in pursuing this case on a contingency basis. More significantly, counsel obtained a substantial settlement for the infant plaintiff relatively early in the case and allows the infant plaintiff to avoid the stress of further litigation, which could be particularly harmful to the infant plaintiff due to the nature of his claims. For all those reasons, the Court orders that the requested attorney's fees be reduced by thirty percent, so that counsel's fee is ███████.

Given this reduction, the net settlement amount to be paid to the infant plaintiff and used to fund the purchase of an annuity will increase from ██████████████. Accordingly, the parties are hereby directed to revise the schedule of future periodic payments discussed herein to reflect the revised net settlement figure to be paid to the infant plaintiff.

## **CONCLUSION**

For the foregoing reasons, the Court grants the motion for approval of the settlement agreement in part. The proposed total settlement amount of ██████ is approved, but the requested attorney's fees are reduced to ███████.

Further, consistent with Plaintiff's request, the Court authorizes the payment of costs, including ██████ to Steven V. Modica, Esq., for mediation services, and ████ to Dr. Christopher Dehon, for his psychological evaluation of the infant plaintiff.

The Court further orders that, following the disbursements to Jeffrey Wicks, PLLC, Mr. Modica, and Dr. Dehon, that the remaining settlement proceeds be deposited into a structured settlement account for the use and benefit of the infant plaintiff, pursuant to C.P.L.R. § 1206(c).

The parties shall execute said agreement and file a stipulation of discontinuance within <u>30 days</u> from the date of entry of this Order.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      November 7, 2023
             Rochester, New York